(98 P.3d 990)
No. 91,348

GREG MUNSON d/b/a GREG MUNSON TRUCKING, *Appellee,* v. TRI-STATE COMMODITIES, INC., A Kansas Corporation, *Defendant,* v. BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY, *Intervenor/Appellant.*

Opinion filed October 15, 2004.

*Teresa L. Sittenauer* and *Justice B. King,* of Fisher, Patterson, Sayler & Smith, L.L.P., for intervenor/appellant.

*Jeffery A. Mason,* of Vignery & Mason L.L.C., of Goodland, for appellee.

Before MARQUARDT, P.J., HILL and McANANY, JJ.

HILL, J.: In this appeal, two creditors, Greg Munson, d/b/a Greg Munson Trucking (Munson), and the Burlington Northern and Santa Fe Railway Company (BNSF), that had judgments against Tri-State Commodities, Inc. (Tri-State), are competing for the same garnished funds. First, Munson successfully sued Tri-State and obtained a judgment against it. Later, Tri-State was sued by the BNSF and, in settling this lawsuit, Tri-State assigned to BNSF

its interest in litigation it had pending against another company, GSO. Ultimately, Tri-State won its lawsuit against GSO and GSO deposited money with its lawyer to satisfy the judgment. In turn, since those judgment proceeds were owing to Tri-State, Munson garnished GSO's lawyer in order to attach those funds in partial satisfaction of Munson's judgment against Tri-State. But BNSF intervened, asserting that its claim through its assignment from Tri-State to the judgment was superior to Munson's.

Using a common-law analysis, the trial court awarded the garnished funds to Munson, the Tri-State creditor that had obtained the first judgment. We believe that was erroneous. It is well settled that property validly transferred or assigned cannot thereafter be reached by garnishment. Further, a judgment does not act as a lien on personal property until a levy is made on the judgment. Therefore, we must reverse because Munson had failed to levy on his judgment until after Tri-State made it assignment of its cause of action to the railroad.

*Background*

A series of lawsuits, judgments, and an assignment of a cause of action over the sale of some mulch are the basis of this case. In order to make sense of the claims of the parties, they must be reviewed.

Munson filed his lawsuit against Tri-State in Sherman District Court in 1995 and received a $31,234 judgment in May 1998.

In 1996, Tri-State sued GSO America, Inc., in federal court in Kansas.

Later, BNSF sued Tri-State in federal court. The two settled their lawsuit by agreeing that BNSF would receive a $104,934 consent judgment and an assignment of Tri-State's claim against GSO. They also agreed that the attorney for Tri-State would continue to pursue the claim against GSO on behalf of BNSF. If successful in its lawsuit, Tri-State would receive 10% of any recovery made on its claim against GSO, its attorney would receive a 20% contingent fee, and the remainder would be turned over to BNSF. In accordance with their agreement on July 20, 1998, BNSF obtained a

security agreement and assignment from Tri-State, and a day later a consent judgment was entered in favor of BNSF against Tri-State.

Finally, Tri-State received a judgment against GSO in the amount of $32,132.60 on March 6, 1999, and that judgment has since been upheld by the federal Court of Appeals. Funds from GSO to satisfy the judgment were held by its attorney, who, because of the competing claims, would not distribute them in the absence of a court order. Therefore, Munson issued a garnishment of the funds in his state court lawsuit and BNSF moved to intervene. The court held a hearing on their competing claims and ordered the GSO attorney to pay the funds into court. The court then decided that Munson was entitled to the money because he had filed his lawsuit and obtained his judgment before BNSF had received its assignment.

BNSF appeals that ruling. It contends that the trial court erroneously awarded the funds to Munson. Since there are no disputes about the facts, this is a question of law over which we exercise unlimited review. See *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 386, 996 P.2d 821 (2000).

*Analysis*

The trial court based its conclusions on three findings: (1) the May 7, 1998, entry of judgment in favor of Munson against Tri-State in case number 95 C 68 predated the July 20, 1998, assignment from Tri-State to BNSF; (2) at the time of the assignment, Tri-State knew of the judgment entered against it in favor of Munson; and (3) at the time of the assignment, BNSF knew or should have known of Munson's judgment against Tri-State. Essentially, the court ruled that "first in time is first in right" in this case and attempted to distinguish this case from a pertinent case in this area, *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 635 P.2d 1248 (1981).

Like this case, the procedural history of *Carson* is complex. In *Carson*, Johnson sued Chevron and Waits Homegas, Inc. in case number 77-C-4, alleging breach of warranties. Waits counterclaimed seeking payment of Johnson's overdue account. Subsequently, on June 23, 1977, Waits filed a separate action against

Johnson in case number 77-C-11 to recover additional amounts owed by Johnson from other matters.

On July 10, 1978, Johnson assigned to Collingwood Grain Company the right to receive up to $50,000 of the proceeds which might be awarded to Johnson in his pending litigation against Waits in case number 77-C-4. This assignment served as collateral to secure Johnson's debt of $41,858.82 to Collingwood. On January 25, 1979, judgment was entered in favor of Waits and against Johnson in case number 77-C-11. This judgment, in the amount of $18,149.22, was reached by agreement of the parties. On March 14, 1980, Johnson's attorney filed an attorney's lien in case number 77-C-4. That same day, a jury entered a verdict in case number 77-C-4 in favor of Johnson against Chevron for $28,350 and against Waits for $5,000. Additionally, the jury awarded Waits $3,336 on Waits' counterclaim against Johnson. The journal entry of judgment was filed April 24, 1980.

In March 1980, after the jury verdict but before the journal entry was filed, Waits garnished Chevron, based upon Waits' judgment in case number 77-C-11, and claimed any money due to Johnson by Chevron from the judgment entered in case number 77-C-4. Two months later, Waits again garnished Chevron; this time, the garnishment was based upon Waits' judgment against Johnson in case number 77-C-4.

On May 19, 1980, Collingwood filed a motion to intervene in both case numbers 77-C-4 and 77-C-11, claiming it had priority over Waits' garnishments by virtue of Collingwood's prior assignment from Johnson, which was dated July 10, 1978. The district court granted Collingwood's motion to intervene and held a hearing to determine priority to the judgment proceeds. Ultimately, the court found the assignment between Collingwood and Johnson was valid and prior to any liens claimed through Waits' garnishments; Waits' judgment in case number 77-C-4 was not subject to being set off against Johnson's judgment versus Waits in that same case, and when Waits paid the judgment due to Johnson, the proceeds should go to Collingwood under its assignment; and Johnson's attorney's lien had priority over Waits' garnishments.

Waits appealed, arguing, *inter alia*, the district court erred in finding that the assignment was valid and had priority over Waits' garnishments and claims. This court rejected Waits' challenges to the validity of the assignment. Regarding Waits' claim of priority, the court held:

"The mere fact that Waits' first garnishment stems from the January 25, 1979, judgment in case No. 77-C-11 does not give Waits priority since the assignment was executed prior to the judgment in case No. 77-C-11, and since a judgment does not act as a lien on personal property unless and until levy is made. *In re Wilson*, 390 F. Supp. 1121 (D. Kan. 1975). Waits' first attempt to levy on the judgment proceeds in case No. 77-C-4 was not made until March of 1980. Since the Collingwood assignment preceded this garnishment attempt by almost two years, we find that the trial court correctly held that Collingwood had priority over the proceeds from the judgment debtor, Chevron." 6 Kan. App. 2d at 792.

Here, in finding Munson was entitled to the funds, the district court distinguished *Carson* on the basis that Munson's *judgment* against Tri-State preceded Tri-State's assignment to BNSF, whereas in *Carson*, no judgment preceded Collingwood's assignment. Further, the court found that even if Munson had issued a garnishment to GSO 10 days after obtaining judgment in May 1998, that garnishment would have been to no avail, as GSO simply would have responded that no funds were being held.

The district court's *factual* distinction between *Carson* and the present case is accurate. Munson's judgment against Tri-State clearly predated Tri-State's assignment to BNSF. The problem with that conclusion is that Munson did not make any attempt to levy its judgment until well after Tri-State had executed an assignment to BNSF. *Carson* instructs that a judgment does not act as a lien unless and until levy is made. 6 Kan. App. 2d at 792.

We acknowledge, as the district court noted, that had Munson issued a garnishment to GSO immediately after obtaining judgment, GSO would not have had funds to release. Importantly, this point ignores the fact that Munson still could have levied its judgment against Tri-State immediately following the judgment in May 1998. Munson could have obtained either a writ of execution under K.S.A. 60-2401 or an order of garnishment using K.S.A. 60-716 on any other property of Tri-State. Such actions would have preserved

Munson's priority right to any future funds held by or for Tri-State. Following *Carson*, Munson's failure to take action immediately after obtaining judgment opened the door for BNSF to gain priority to the funds.

Ten years before *Carson*, our Supreme Court settled a priority fight between an assignment and some garnishments. In *Nelson v. Boula*, 207 Kan. 771, 486 P.2d 1340 (1971), Eaton obtained a judgment against Nelson on July 19, 1968. A few months later, Burnette obtained a judgment against Nelson. Neither judgment was paid. On April 28, 1969, Nelson obtained a judgment against Boula. That same day, Nelson assigned the judgment to Mills. The following month, both Burnette and Eaton attempted to garnish Boula and his attorney. Their priority fight ensued between Mills, who claimed the funds by right of assignment and/or by an attorney's lien filed April 29, 1969, and Burnette and Eaton, both of whom claimed the funds through garnishment. The district court accorded priority to the assignment over the garnishments.

Burnette and Eaton appealed, challenging the district court's priority determination. They did not challenge the validity of the assignment itself, but, rather, they argued that under K.S.A. 60-2405, the assignment did not become effective until it was filed with the clerk of the district court. The Supreme Court rejected this contention, affirmed the district court's decision, and said: "It is settled law that property validly transferred or assigned by a defendant cannot thereafter be reached by garnishment. [Citations omitted.]" 207 Kan. at 773. The court then examined whether K.S.A. 60-2405 nullified this prevailing rule, as Burnette and Eaton claimed.

K.S.A. 60-2405 affords a person who claims to have succeeded to the interest of a judgment creditor, whether by operation of law or by assignment, the right to be substituted for the judgment creditor and to enforce the judgment upon the filing of an assignment with the clerk of the district court. The court determined that the intent of K.S.A. 60-2405 was to provide an assignee or other successor with the means to enforce a judgment to which he or she has succeeded; it was not intended to aid a creditor in garnishment by reason of the mere fact that he or she did not have

notice or knowledge of a previous assignment. Further, the statute authorized a court to determine the rights and liabilities of parties in the event the validity of a transfer is contested. Ultimately, the court rejected Burnette's and Eaton's contention that K.S.A. 60-2405 nullified the prevailing rule that an assignment is superior to a subsequent garnishment.

In both *Carson* and *Nelson*, an assignment of a cause of action made prior to a garnishment prevailed. In *Nelson*, this result was reached despite the existence of two judgments against Nelson prior to his assignment to Mills. Burnette and Eaton failed to levy their judgments against Nelson prior to Nelson's assignment, thus, the assignment prevailed.

Likewise, Tri-State's assignment to BNSF, which was made after Munson's judgment against Tri-State but prior to Munson's garnishment, must prevail. Accordingly, we hold the district court erred in determining Munson was entitled to the funds. The funds should be awarded to BNSF.

Reversed and remanded with directions to enter judgment in accordance with this opinion.